UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 13-cr-269 |
| VERSUS | JUDGE TOM STAGG |
| KERRY D. GAYFIELD | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Suppress, [doc. # 16], filed by Defendant Kerry D. Gayfield. For reasons stated below, it is recommended that the Motion be **DENIED**.

## Background

On January 10, 2013, officers searched Defendant's home pursuant to a search warrant they obtained based on the information provided by a confidential informant. While searching the residence, the officers found and seized several incriminating items. According to the Government, Detective Jason Kukal read Defendant his constitutional *Miranda* rights and Defendant then voluntarily waived those rights and made certain incriminating statements.

Nine months later, on October 10, 2013, Senior Special Agent Robert Johnson interviewed Defendant at the Ouachita Parish Correctional Center about two weapons seized from Defendant's residence following the aforementioned search. The Government contends that, prior to questioning, Agent Johnson advised Defendant of his *Miranda* rights using an Alcohol, Tobacco, Firearms and Explosives ("ATF") "Advice of Rights and Waiver" form, and Defendant then waived those rights by signing the form before making certain incriminating statements.

On October 23, 2013, a federal grand jury returned a three-count indictment against

Defendant, charging him with knowingly possessing firearms and ammunition (a Smith and Wesson .38 Special caliber revolver with .38 Special Ammunition and a Jennings model J22 .22 caliber pistol with .22 caliber ammunition) after having previously been convicted of a felony (Count 1), knowingly possessing and intending to distribute marijuana (Count 2), and possession of a firearm in relation to drug trafficking (Count 3).  [doc. # 1, p. 1-2].  The Government seeks forfeiture of the following: the firearms and ammunition described above;  any and all property constituting or derived from any proceeds that Defendant obtained directly or indirectly as a result of Counts 2 and 3; and any and all property used or intended to be used in any manner or part to commit or to facilitate the commission of the violations alleged in Counts 2 and 3.  *Id.* at 3-4.

On December 20, 2013, Defendant filed the instant Motion to Suppress, seeking to suppress the tangible evidence seized as a result of an alleged illegal search of his home, as well as any incriminating statements, admissions, or confessions that he may have made following government interrogation.  [doc. # 16].  Following a February 18, 2014, evidentiary hearing, the matter is now before the Court.

## Hearing Testimony and Evidence

The following facts were established via the testimony and evidence presented at the February 18, 2014, hearing.

### Detective Joshua May

In an incident report, Detective Joshua May stated that, on January 10, 2013, he initiated a traffic stop after observing that the stopped vehicle's headlight was inoperable.  [doc. # 36-1, p. 3].  Detective Daniel Freeland searched the passenger of the vehicle, Christian Armstrong, and

found a marijuana pipe containing marijuana residue. *Id.* at 5. After speaking with the detectives, Armstrong agreed to cooperate in a drug investigation. *Id.* Armstrong told the detectives that the pipe and the marijuana were for his father, and took the detectives to his father's house. *Id.* at 9. The detectives, upon consent from Armstrong's father, searched the house and discovered, *inter alia*, loose marijuana, a partially burned marijuana cigarette, and a marijuana plant. *Id.*

Detective May testified that, following the search of Armstrong's father's house, Armstrong told the detectives that he bought his marijuana at a residence located at 111 West Rowan Circle in West Monroe, Louisiana, from an individual he knew only as "Country," just thirty minutes prior to the vehicle stop. He also told the detectives that he observed a gallon-sized bag half-filled with marijuana and a .38 snub nose handgun on Country's person while in Country's home. He then led the detectives to the West Rowan Circle residence. As a result of Armstrong's information, Detective May secured a search warrant to search the West Rowan Circle residence. [*See* doc. # 36-1, p. 28-29]. The officers obtained the warrant prior to searching the residence.

In another incident report, Detective May stated that, while searching the residence, officers observed Defendant holding a bag of marijuana and carrying a .38 caliber pistol. *Id.* at 23. In a document entitled, "Affidavit of Probable Cause for Arrest Without a Warrant," May stated that the officers found several bags of marijuana, numerous plastic sandwich bags, a digital scale, marijuana cigars, pipes, $469.00 in cash, a plastic bag containing suspected cocaine, a suspected Hydrocodone pill, suspected liquid Hydrocodone, a .22 caliber Jennings pistol, ammunition, a partially burned marijuana cigarette, and various paraphernalia items. *Id.* at 15.

May testified that Detective Kukal read Defendant his *Miranda* rights, Defendant waived those rights, and Defendant then made certain incriminating statements.

On cross-examination, Detective May stated that, prior to the vehicle stop, he had never encountered Armstrong and had never received any information from him as a cooperating witness. May also stated that, prior to Armstrong's information, he had no knowledge of Defendant's suspected illegal activities.

<u>Sergeant Jason Kukal</u>

Sergeant Kukal's testimony essentially mirrored Detective May's testimony. In addition to what May stated, Seargeant Kukal testified that he read Defendant his *Miranda* rights and ensured that Defendant understood those rights. Specifically, Kukal told Defendant:

> You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to the presence of an attorney to be with you during questioning and prior to the questioning if you so desire. If you cannot afford an attorney, one will be appointed to you by the court. You can stop answering questions at any time.

Defendant indicated that he understood his rights and proceeded to make statements about the items found in the residence.

<u>Special Agent Robert M. Johnson</u>

Robert Johnson, a senior special agent with the ATF, interviewed Defendant at the Ouachita Parish Correctional Center on October 10, 2013, regarding the firearms seized from Defendant's residence. Before questioning Defendant, Agent Johnson identified himself as an ATF agent, told Defendant why he was questioning him, and advised Defendant of his *Miranda* rights using an ATF form entitled, "Advice of Rights and Waiver." Agent Johnson read the *Miranda* rights language from the form aloud and gave Defendant a copy of the form to read if

he wished. Defendant waived his rights by signing the form and proceeded to make incriminating statements.

The Government introduced a copy of the ATF form into evidence. The "Statement of Rights" portion of the form reads:

> You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer before we ask you any questions and to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you if you wish before any questioning begins. If you decide to answer any questions now without a lawyer present, you have the right to stop answering at any time.

[doc. # 36-1, p. 34]. The "Waiver" portion of the form states:

> I have read this statement of my rights or it has been read to me, and I understand these rights. At this time I am willing to answer questions without a lawyer present. No promises or threats have been made to me, and no pressure or force of any kind has been used against me.

*Id.*

On cross-examination, Agent Johnson testified that he did not record his statements regarding Defendant's right to the presence of an attorney.

## **Law and Analysis**

Defendant first seeks to suppress the tangible evidence that the officers recovered from his home. [doc. # 16].[1] Defendant contends that the officers' search warrant was defective because the information provided by Armstrong (the officers' confidential informant) that was

---

[1] Defendant's Motion states that the officers searched his home without first obtaining a valid warrant. [doc. # 16-1, p. 1]. Prior to the February 18, 2014 evidentiary hearing, Defendant contended that a warrant was not obtained until two hours after the search began. *Id.* However, subsequent to the testimony presented at the hearing, counsel for Defendant withdrew this argument and conceded that the officers secured a warrant before searching Defendant's residence. Accordingly, this argument is moot.

used to secure the warrant was "utterly devoid of any facts or details which would tend to prove [Armstrong's] reliability or veracity." [doc. # 16-1, p. 3]. Defendant also seeks to suppress any incriminating statements, admissions, or confessions that he may have made because "[t]he government cannot prove a valid *Miranda* waiver nor the voluntariness of [Defendant's] alleged confession." *Id.* at 2.

**I.     The Search**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. The courts deter Fourth Amendment violations by excluding evidence obtained as a result of the transgression. *See U.S. v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (citation omitted). This so-called exclusionary rule requires the suppression of evidence that is seized pursuant to a warrant unsupported by probable cause. *U.S. v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (citation omitted). "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Gibbs, supra* (citation omitted). Thus, "[e]vidence obtained during the execution of a subsequently invalidated search warrant is *not* excluded *if* the officer executing the warrant relied on it in good faith." *Id*. If this good faith exception applies, then the inquiry ends. *Gibbs, supra*.[2] The government bears the burden of demonstrating that the good faith exception applies. *U.S. v. Gant*, 759 F.2d 484, 487 (5th Cir. 1985).

The Fifth Circuit has further explained the good faith exception as follows:

---

[2] If the good faith exception does not apply, the court must then consider whether the warrant was supported by probable cause. *Id*.

> [w]here the official action was pursued in complete good faith . . . the deterrence rationale loses much of its force. Therefore, if the officers obtained the evidence in objectively reasonable good-faith reliance upon a search warrant, the evidence is admissible even though the affidavit on which the warrant was based was insufficient to establish probable cause. The good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. In conducting the good faith inquiry, the court may examine all of the circumstances surrounding the issuance of the warrant. [S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.

*Pope, supra*. (citations and internal quotation marks omitted).

A reviewing court is obliged to defer to an issuing judge's probable cause determination in signing a warrant and uphold the officer's good faith reliance thereon unless:

(1) the issuing-judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;

(2) the issuing-judge wholly abandoned his judicial role in such a manner that no reasonably well trained officer should rely on the warrant;

(3) the underlying affidavit is "bare bones" (so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable); or

(4) the warrant is so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.

*Gibbs, supra* (citations and internal quotation marks omitted).

Here, Defendant only challenges the probable cause underlying the warrant's issuance and does not address the good faith exception or any of its four qualifiers. However, out of an abundance of caution, the Court notes that Defendant could possibly be invoking the third qualifier to the good faith exception (i.e. the "bare bones" qualifier) when he argues that the information provided by Armstrong and contained in the warrant application was "utterly devoid

7

of any facts or details which would tend to prove [Armstrong's] reliability or veracity." [doc. # 16-1, p. 3].

A "bare bones" affidavit "is so deficient in demonstrating probable cause that it renders an officer's belief in [the existence of probable cause] completely unreasonable." *U.S. v. Bowens*, 108 Fed. Appx. 945, 964 (5th Cir. Sept. 17, 2004) (unpubl.), *sentence vacated*, 543 U.S. 1181 (2005). "The Fifth circuit has identified several 'indicia of probable cause' which prevent an affidavit based upon information from a confidential informant from being a bare bones affidavit." *U.S. v. Fields*, 182 F. Supp. 2d 575, 578-79 (E.D. Tex. 2002). Two of these "indicia" are whether the informant's statements are against his or her own penal interests, *U.S. v. McKeever*, 5 F.3d 863, 865 (5th Cir. 1993), and whether the informant provides a sufficient degree of detail regarding the alleged criminal activity, *U.S. v. Cisneros*, 112 F.3d 1272, 1278-79 (5th Cir. 1997).

The affidavit here alleges that Armstrong bought marijuana from Defendant at Defendant's residence and, while there, observed a gallon-sized bag half-filled with marijuana and a .38 snub nose handgun on Defendant's person. [doc. # 36-1, p. 28-29]. Armstrong's admission that he bought marijuana from Defendant constitutes a significant statement contrary to Armstrong's penal interest. *Id.* As the Fifth Circuit stated in *McKeever*, "The Fact that the CI's statements were against his own penal interest amounts to substantial corroboration" of those statements. *McKeever*, 5 F.3d at 865. Moreover, the facts and circumstances described in the affidavit were sufficiently detailed so that it would not have been completely unreasonable for the officers executing the warrant to conclude that the warrant was supported by probable cause.

Ultimately, given the deference owed to the issuing judge's probable cause determination, the Court cannot conclude that the affidavit was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable. In other words, unlike a "bare-bones" affidavit that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause," the affidavit in this case provided a sufficient factual basis to enable the issuing judge to make a meaningful probable cause determination. *See U.S. v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993). Accordingly, Defendant's Motion, with respect to his Fourth Amendment claim should be **DENIED**.[3]

## II. Suppression of Defendant's Incriminating Statements

The admissibility of pre-indictment confessions is governed by both the Fifth Amendment privilege against compelled self-incrimination and the Due Process Clause of the Fifth and/or Fourteenth Amendments.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. AMEND. V. In *Miranda v. Arizona*, the Supreme Court held that

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned

---

[3] Because the good faith exception applies, the Court need not reach Defendant's contention that the issuing judge did not have a substantial basis for finding probable cause to support the warrant's issuance. *U.S. v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003).

> that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Miranda v. Arizona*, 384 U.S. 436, 444, (1966) (footnote omitted).

The central principle established by *Miranda* is that if the police question an in-custody suspect without informing him of the rights specified therein, his responses cannot be introduced into evidence to establish his guilt. *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984). "[F]ailure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained. Conversely, giving the warnings and getting a waiver has generally produced a virtual ticket of admissibility; maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver." *Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004) (footnote omitted).

In addition, a criminal defendant is "deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession and even though there is ample evidence aside from the confession to support the conviction." *Lego v. Twomey*, 404 U.S. 477, 483-484, (1972) (citations and internal quotation marks omitted). The government must establish, by a preponderance of the evidence, the voluntariness of an incriminating statement and the *Miranda* waiver. *Colorado v. Connelly*, 479 U.S. 157, 169 (1986); *U.S. v. Mullin*, 178 F.3d 334, 341 (5th Cir. 1999). The voluntariness of a waiver contemplates two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of

>both the nature of the right being abandoned and the consequences of the decision to abandon it.

*U.S. v. Guanespen-Portillo*, 514 F.3d 393, 403 (5th Cir. 2008) (citation omitted).

Nevertheless, in *Connelly*, the Supreme Court clarified that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Connelly, supra*. Equally, "[t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Id*. Thus, the voluntariness of a *Miranda* waiver and resulting confession depend upon the absence of police overreaching, not on "free choice." *Id*.

After *Connelly*, the Fifth Circuit remarked that the relevant test no longer focuses on a defendant's free will. *U.S. v. Raymer*, 876 F.2d 383, 386-87 (5th Cir. 1989) (citations omitted). "Instead, the focus is on the presence or absence of police coercion." *Id*. Although a defendant's mental condition still figures into the voluntariness calculus, there must be an element of official overreaching to render a confession involuntary under the Constitution. *Id*. In other words, the police must exploit the defendant's mental condition. *See Raymer, supra*.

Here, Defendant conclusorily argues that any incriminating statements he may have made should be suppressed because he did not voluntarily waive his *Miranda* rights and did not voluntarily make any incriminating statements. [doc. # 16-1, p. 2]. Defendant fails to specify which statements he is seeking to suppress and fails to mention any specific grounds on which to suppress them.

Officers questioned Defendant on two separate occasions, once shortly after his arrest, and then again shortly before he was indicted. As to the first instance, Seargeant Kukal advised

Defendant of his rights and ensured that Defendant understood those rights. As to the latter, Agent Johnson advised Defendant of his rights. The record is devoid of any allegations or evidence of coercive police tactics and there are no issues regarding Defendant's mental competence or lucidity at the time that he made the incriminating statements.

In the absence of police "overreaching" or coercion and upon consideration of the totality of the circumstances, the Court finds that the Government has demonstrated by a preponderance of the evidence the voluntariness of Defendant's incriminating statement(s) and *Miranda* waivers; thus, Defendant's Motion should be **DENIED** in this respect.

## Conclusion

For the above-stated reasons,

IT IS RECOMMENDED that the Motion to Suppress, [doc. # 16], filed by Defendant Kerry D. Gayfield be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen(14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection, response, or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS**

**SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 24th day of February 2014.

_____
Karen L. Hayes, U. S. Magistrate Judge